# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| CHRIS MATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | 1:20-cv-04880-LMM-RDC |
| | ) | |
| CITY OF FOREST PARK, GA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S INITIAL DISCLOSURES

**COMES NOW** Defendant City of Forest Park, Georgia (the "City"), and pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and Local Rule 26.1, N.D. Ga., makes its Initial Disclosures.  The disclosures set forth herein constitute the best information presently available to the City; however, because the City has not completed its investigation of the facts underlying this lawsuit, nor has it completed discovery or preparation of this case for trial, these disclosures are provided without prejudice to the City's right to timely amend, supplement, or change said disclosures if and when additional, different, or more accurate information becomes available.  Moreover, said disclosures are subject to correction for inadvertent errors or omissions.

**Initial Disclosure No. 1:**

**If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.**

**Response:**

The City does not contend that it has been improperly identified.

**Initial Disclosure No. 2:**

**Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff. If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention.**

**Response:**

Empower Retirement, LLC, which served as the third-party administrator of

the retirement plans at issue in this case, may be a necessary party to this action.

**Initial Disclosure No. 3:**

**Provide a detailed factual basis for the defense or defenses or any counterclaims or crossclaims asserted by defendant in the responsive pleading.**

**Response:**

The City has not asserted any counterclaim or crossclaim in its Answer to

Plaintiff's Amended Complaint.  The City has asserted the following defenses to

this action:

**First Defense:** *The Amended Complaint fails, in whole or in part, to state a claim against the City upon which relief can be granted.* The allegations contained in Plaintiff's Amended Complaint are insufficient to state a claim for relief. Once discovery reveals the specific decisions made or actions taken by the City, the evidence will establish the existence of a lawful basis underlying same.

**Second Defense:** *At all times, the City's actions with regard to Plaintiff and his employment have been in conformance with all applicable constitutional standards, laws, rules, and regulations.* Any action taken by the City adversely affecting Plaintiff or his employment was for legitimate, non-discriminatory reasons and, as such, did not violate any constitutional or statutory rights possessed by Plaintiff. Additionally, and/or alternatively, even if Plaintiff could demonstrate that discrimination played a motivating part in any such adverse action – which he cannot – the same action would have been taken for legitimate, non-discriminatory reasons. Furthermore, the City has not violated Plaintiff's rights under federal or state law. Once discovery reveals the specific decisions made or actions taken by the City, the evidence will establish the existence of a lawful basis underlying same.

**Third Defense:** *Any action taken by the City adversely affecting Plaintiff or his employment was for legitimate, non-discriminatory reasons and, as such, did*

*not violate any constitutional or statutory rights possessed by Plaintiff. Additionally, and/or alternatively, even if Plaintiff could demonstrate that discrimination played a motivating part in any such adverse action – which he cannot – the same action would have been taken for legitimate, non-discriminatory reasons.* The City denies that it discriminated against Plaintiff, but even if he could demonstrate that discrimination played a motivating party in any such adverse action (which he cannot), the same action would have been taken for legitimate, non-discriminatory reasons. Once discovery reveals the specific decisions made or actions taken by the City, which Plaintiff contends to be discriminatory, the evidence will establish the existence of a lawful basis underlying same.

**Fourth Defense:** *The City has not intentionally, willfully, or negligently violated Plaintiff's rights in any manner or acted maliciously, with reckless indifference, or negligently with regard to Plaintiff. At no time has the City acted with any intent to injure or otherwise cause harm to Plaintiff. The City has, at all times, acted in accord and in good faith compliance with applicable law.* The City denies that it discriminated against Plaintiff or otherwise violated Plaintiff's rights under federal or state law. Any action taken by the City adversely affecting Plaintiff or his employment was for legitimate, non-discriminatory reasons and, as

such, did not violate any constitutional or statutory rights possessed by Plaintiff. Additionally, and/or alternatively, even if Plaintiff could demonstrate that discrimination played a motivating part in any such adverse action – which he cannot – the same action would have been taken for legitimate, non-discriminatory reasons. Once discovery reveals the specific decisions made or actions taken by the City, the evidence will establish the existence of a lawful basis underlying same.

**Fifth Defense:** *Plaintiff cannot demonstrate the existence of an unlawful policy, custom, or practice necessary to support his claim(s) brought pursuant to 42 U.S.C. § 1983 ("Section 1983") against the City. Moreover, the City is not a proper "person" subject to suit under Section 1983.* Municipalities cannot be held liable under Section 1983 for constitutional violations on a theory of respondeat superior. In order to recover in a claim brought against a local government entity pursuant to Section 1983, Plaintiff must prove the existence of an unconstitutional or unlawful policy, custom or practice on the part of such entity. Plaintiff must show municipal action was taken with the requisite degree of culpability and causally linked to a deprivation of a constitutional right. Plaintiff is unable to make such a showing. In addition, the City is not a "person" within the meaning of Section 1983.

**Sixth Defense:** *Plaintiff's claims may be barred in whole or in part by accord and satisfaction, failure of consideration, fraud, illegality, consent, waiver, release, laches, failure of condition precedent, recoupment, justification, unclean hands, after-acquired evidence, estoppel, and/or additional defenses that may be identified during the proceedings.* By raising these defenses, the City is preserving its ability to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Seventh Defense:** *To the extent any employee, manager, supervisor, or official of the City engaged in any unlawful conduct as alleged in the Amended Complaint, such actions were outside the scope and course of their employment and were not in furtherance of the City's business.* To the extent any unlawful conduct occurred, which the City denies, the City cannot be held liable for such acts because they were outside the scope of employment of those who took them.

**Eighth Defense:** *Plaintiff's claims under 42 U.S.C. § 1981 ("Section 1981") are barred to the extent they are duplicative and redundant of his claims under the Fourteenth Amendment to the U.S. Constitution.* A prevailing plaintiff under Title VII, Section 1981, and the Fourteenth Amendment to the U.S. Constitution will not be permitted a double recovery, as he seeks redress for the same wrong pursuant to different legal authority.

**Ninth Defense:** *Plaintiff is not entitled to any of the equitable, declaratory, or legal relief requested against the City. Additionally, and/or alternatively, to the extent he is entitled to damages or other relief, the same is limited by applicable law.* While the City maintains that Plaintiff can establish no set of facts in support of his claims that would entitle him to the relief requested or to any relief whatsoever, relief is limited by applicable law.

**Tenth Defense:** *Any damages that Plaintiff suffered resulted from the acts or omissions of others for whom the City is not liable and/or were the direct and proximate result of his own actions or inactions.* To the extent any unlawful conduct occurred, which the City denies, the City cannot be held liable for such acts because they were outside the scope of employment of those who took them and/or were caused by Plaintiff's own actions.

**Eleventh Defense:** *Plaintiff's claims against the City under Section 1981, Section 1983, and the Fourteenth Amendment to the U.S. Constitution are barred on the grounds that Plaintiff cannot show that any damages he allegedly suffered were caused by actions taken under color of state law.* Municipalities cannot be held liable under Section 1983 for constitutional violations on a theory of respondeat superior. In order to recover in a claim brought against a local government entity pursuant to Section 1983, Plaintiff must prove the existence of

an unconstitutional or unlawful policy, custom or practice on the part of such entity.  Plaintiff must show municipal action was taken with the requisite degree of culpability and causally linked to a deprivation of a constitutional right.  Plaintiff is unable to make such a showing.

**<u>Twelfth Defense:</u>** *Plaintiff's claims are barred to the extent that he failed to exhaust his administrative remedies or otherwise satisfy all conditions precedent or statutory prerequisites to bringing and maintaining his claims against Defendants.  In particular, Plaintiff's claims are barred to the extent any action upon which they are based occurred more than 180 days prior to the filing of his administrative charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and/or were not the subject of or were otherwise outside the scope of said charges.*  Plaintiff's Title VII claim is barred to the extent he did not exhaust his administrative remedies or such claim is based upon acts that occurred prior to the limitations period and to the extent that Plaintiff unreasonably delayed in pursuing such a claim.  Specifically, Plaintiff failed to file his Charge of Discrimination with the EEOC within 180 days of the complained-of discrimination, and as such, his Title VII claim is barred. By raising these defenses, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Thirteenth Defense:** *To the extent Plaintiff seeks punitive damages, such relief is not available against the City as a matter of law.* To the extent Plaintiff seeks to recover punitive damages against the City, such a claim fails because government agencies, such as the City, cannot be held liable for punitive damages as to his Title VII or Section 1983 claims. See, e.g., Murphy v. City of Flagler Beach, 846 F.2d 1306, 1309 n.5 (11th Cir. 1988) (recognizing that "punitive damages . . . are not recoverable against a municipality in a Section 1983 action"); Bradley v. DeKalb Cty., No. 1:10–CV–0218–TWT–GGB, 2010 WL 4639240, at *5 (N.D. Ga. May 17, 2010) (noting that government agencies are exempt from punitive damages under Title VII and § 1983).

**Fourteenth Defense:** *Plaintiff's claims and remedies are or may be barred, in whole or in part, by the applicable statute of limitations.* By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Fifteenth Defense:** *The City affirmatively denies that the retirement plans, which are the subject of Plaintiff's contractual claims, constitute binding contracts between the City and Plaintiff.* This defense is self-explanatory. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Sixteenth Defense:** *To the extent that that the retirement plans, which are the subject of Plaintiff's contractual claims, constitute binding contracts, the City was not a party to said contracts with Plaintiff.* The City used a third-party private company to administer the retirement plans, which are the subject of Plaintiff's contractual claims. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Seventeenth Defense:** *The City did not breach any duty owed to Plaintiff in this action.* This defense is self-explanatory. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Eighteenth Defense:** *The City did not act in a fiduciary capacity with regard to the claims set forth in the Amended Complaint.* This defense is self-explanatory. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Nineteenth Defense:** *The City owed no fiduciary duty to Plaintiff.* This defense is self-explanatory. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Twentieth Defense:** *Plaintiff's claims are barred to the extent any damages*

*were proximately caused by his own actions or omissions, or by the actions or omissions of others for whom the City is not liable, or by other independent and/or intervening causes that the City did not control or have the right to control.* Any harm that Plaintiff allegedly suffered was not caused by the City. Rather, any such harm was caused by Plaintiff's own actions or the actions of third parties. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

      **Twenty-First Defense:** *Plaintiff's contractual claims for relief are barred by the express and unambiguous terms and conditions of the alleged contract(s) between the parties and/or barred against the City to the extent that the City was not in privity with Plaintiff.* This defense is self-explanatory. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

      **Twenty-Second Defense:** *Plaintiff's claim for damages, the entitlement to which is expressly denied, is barred to the extent that he has failed to mitigate his damages as required by law.* Plaintiff is not entitled to the specific relief requested or to any relief whatsoever; however, in the event that Plaintiff is entitled to any relief, which he is not, applicable law requires that he act reasonably to mitigate his damages. Any monetary relief sought by Plaintiff is subject to reduction to the

extent of any unreasonable failure to mitigate and also to the extent of any such mitigation.  By raising this defense, the City is preserving its ability to conduct discovery on this issue and to pursue such a defense if the facts so warrant.

**Twenty-Third Defense**: *The City has not acted in bad faith, been stubbornly litigious, or caused Plaintiff unnecessary trouble and expense, therefore, Plaintiff is not entitled to recovery of its expenses of litigation under O.C.G.A. § 13-6-11.* This defense is self-explanatory. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Twenty-Fourth Defense**: *The existence of a bona fide controversy precludes any award of attorneys' fees and other expenses of litigation under O.C.G.A. § 13-6-11.* Each of Plaintiff's substantive claims is due to be dismissed as a matter of law, and O.C.G.A. § 13-6-11 provides no independent cause of action. By raising this defense, the City reserves the right to conduct discovery on these issues and to pursue such defenses if the facts so warrant.

**Twenty-Fifth Defense**: *The City complied with the requirements of the Georgia Open Records Act, and acted in good faith reliance on the Georgia Open Records Act.* The City complied with the provisions of the Georgia Open Records Act ("ORA") in responding to Plaintiff's June 24, 2020 Open Records request, and

the City acted in good faith reliance on applicable law. Specifically, Plaintiff submitted a request under the ORA to the City on or about June 24, 2020. While the City produced records responsive to nearly all of Plaintiff's request, one request sought the following: "any and all non-privileged written, electronic, or any other form of tangible communication(s), including email, between and among any employee, elected official, staff member, or any other individual regarding [Plaintiff]." It was explained to counsel for Plaintiff that the City interpreted this request to include as responsive every email sent or received by Plaintiff and every email that mentioned Plaintiff from any email account maintained by an employee or elected official of the City. It was further explained that the City utilized an antiquated email system that would require the City to search each individual email account separately to locate responsive emails – i.e., the City could not simply conduct a system-wide search. Finally, it was explained that each potentially responsive email would need to be reviewed for confidential information and privilege. Plaintiff, nonetheless, insisted on moving forward with his request. By extrapolating the time it would take to search approximately 408 email accounts maintained by the City and review responsive emails, the City provided a cost estimate using a rate of approximately $16.00 per/hour, which was the rate of the lowest paid individual with the necessary skill to accomplish the task. Plaintiff

baulked at the cost estimate, refused to pay for production of the remaining records in question, and failed to engage in good faith to further clarify the above-referenced request.

**Twenty-Sixth Defense:** *Plaintiff acted without substantial justification in initiating a claim under the Georgia Open Records Act, and as a result, the City is entitled to reasonable attorneys' fees and costs stemming from its defense of such claim.* Because the City complied with the Georgia Open Records Act in responding to Plaintiff's June 24, 2020 Open Records request, Plaintiff's claim that the City violated the Georgia Open Records Act with respect to said request was brought without "substantial justification." Therefore, pursuant to O.C.G.A. § 50-18-73(b), the City is entitled to reasonable attorneys' fees and costs stemming from its defense of such claim.

**Twenty-Seventh Defense:** *The City hereby reserves the right to seek leave to amend this Answer or add additional defenses, or to withdraw defenses, after reasonable opportunity for appropriate discovery.* This defense is self-explanatory.

**Initial Disclosure No. 4:**

**Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which defendants contend are applicable to this action.**

**<u>Response</u>:**

In addition to the authority previously cited herein,

1.     Title VII of the Civil Rights Act, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, and all
       illustrative case law;

2.     42 U.S.C. § 1981, and all illustrative case law;

3.     42 U.S.C. § 1983, and all illustrative case law;

4.     The Equal Protection Clause of the Fourteenth Amendment to the
       United States Constitution, and all illustrative case law;

5.     Georgia state law relating to breach of contract, and all illustrative
       case law;

6.     Georgia state law relating to breach of fiduciary duties, and all
       illustrative case law;

7.     The Georgia Open Records Act, O.C.G.A. § 50-18-70, <u>et</u> <u>seq.</u>, and all
       illustrative case law;

8.     O.C.G.A. § 13-6-11, and all illustrative case law.

**<u>Initial Disclosure No. 5</u>:**

**Provide the name and, if known, the address and telephone number of each
individual likely to have discoverable information that you may use to support
your claims or defenses, unless solely for impeachment, identifying the
subjects of the information.   (Attach witness list to Initial Disclosures as
Attachment A.)**

**Response**:

The City reserves the right to call any individual identified by Plaintiff in his Initial Disclosures or any supplement thereto, as well as any individual(s) identified during the course of discovery.  At the present time, the City believes the individuals set forth in Attachment "A" may have knowledge of discoverable information relevant to their defenses.  The City reserves the right to supplement this list.

**Initial Disclosure No. 6**:

**Provide the name of any person who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence.  For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.  (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)**

**Response**:

The City has not identified or retained any expert witnesses at this time, but reserves the right to supplement this response if they intend to call an expert witness.

**Initial Disclosure No. 7**:

**Provide a copy of, or description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.   (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

**Response:**

Presently, the City believes the documents described in Attachment "C" may be used to support its defenses.  The City reserves the right to supplement this list.

**Initial Disclosure No. 8:**

**In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under Fed.R.Civ.P. 34.  (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

**Response:**

The City has not asserted any counterclaims or cross-claims in this matter. However, the City contends that it is entitled to fees and costs associated with the defense of this matter, which are not subject to calculation at this time.

**Initial Disclosure No. 9:**

**If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.**

**Response:**

The City does not contend that some other person or legal entity is liable to Plaintiff or the City in this matter.

**Initial Disclosure No. 10:**

**Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

    **Response:**

    <u>See</u> Defendant-00001 - Defendant-00014, which is attached hereto as

Exhibit E.

    Respectfully submitted, this the 20th day of January, 2021.

                      <u>*s/ K. Tate Gray*</u>
                      Sharon P. Morgan
                      Georgia Bar No. 522955
                      Laura A. Denton
                      Georgia Bar No. 158667
                      K. Tate Gray
                      Georgia Bar No. 919123

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E.
800 International Tower
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (Facsimile)
morgan@elarbeethompson.com
denton@elarbeethompson.com
gray@elarbeethompson.com

*Attorneys for Defendant City of Forest Park*

- 18 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CHRIS MATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| vs. | ) | 1:20-cv-04880-LMM-RDC |
| | ) | |
| CITY OF FOREST PARK, GA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2021, I filed a true and correct copy of the foregoing **DEFENDANT'S INITIAL DISCLOSURES** via the Court's electronic filing system, which will automatically send notification of such filing to all counsel of record:

Steven N. Newton
Nancy B. Pridgen

*s/ K. Tate Gray*
K. Tate Gray
Georgia Bar No. 919123

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E.
800 International Tower
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (Facsimile)
gray@elarbeethompson.com

*Attorney for Defendant City of Forest Park*

**Chris Matson v. City of Forest Park**
**Civil Action File No. 1:20-cv-04880-LMM-RDC**

**Attachment "A"**

By this reference, the City incorporates herein all individuals identified by Plaintiff in his Initial Disclosures or any subsequent amendment thereto; as well as all individuals identified during the course of discovery, including, but not limited to, all individuals identified during any depositions in this matter.  At the present time, the City believes the following individuals also may have discoverable information to support its defenses.

    1.    Plaintiff Chris Matson
            c/o Steven N. Newton
            Steven N. Newton, LLC
            401 Westpark Ct., Suite 200
            Peachtree City, GA 30269
            (678) 831-0707

            Nancy B. Pridgen
            Pridgen Bassett Law, LLC
            One Glenlake Pkwy., Suite 650
            Atlanta, GA 30328
            (404) 551-5884

Plaintiff Matson has knowledge of his employment with the City, as well as the claims and allegations in his Amended Complaint.

    2.    Nathaniel Clark
            Chief of Police for the City of Forest Park
            c/o counsel for the City
            Sharon P. Morgan, Laura A. Denton, and K. Tate Gray
            Elarbee, Thompson, Sapp & Wilson, LLP

800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700

Chief Clark has knowledge relating to the third-party, independent audits conducted that revealed the financial misfeasance of Plaintiff and the reasons for Plaintiff's termination.

3.   Angela Redding
     Former City Manager with the City of Forest Park
     c/o counsel for the City
     Sharon P. Morgan, Laura A. Denton, and K. Tate Gray
     Elarbee, Thompson, Sapp & Wilson, LLP
     800 International Tower
     229 Peachtree Street, N.E.
     Atlanta, Georgia 30303
     (404) 659-6700

Former City Manager Redding has knowledge relating to the reasons for Plaintiff's termination.

4.   Ken Bell and Associates
     P.O. Box 1542
     Duarte, CA 91010

Ken Bell and Associates has information relating to the independent audit it conducted of the City Police Department.

5.   Mauldin & Jenkins CPAs & Advisors
     200 Galleria Pkwy. SE
     Suite 1700
     Atlanta, GA 30339
     (770) 955-8600

Mauldin & Jenkins CPAs & Advisors has information relating to the independent audit it conducted of the City Police Department.

6.    Empower Retirement, LLC
       Great West Life Center III
       8525 E. Orchard Rd.
       Greenwood Village, CO 80111

Empower Retirement, LLC has knowledge relating to the terms and conditions and administration of the retirement plans at issue in this action.

The City further reserves the right to supplement and/or correct this list as additional information becomes available.

**<u>Chris Matson v. City of Forest Park</u>**
**Civil Action File No. 1:20-cv-04880-LMM-RDC**

**Attachment "C"**

By this reference, the City identifies all documents, data compilations, and tangible things identified by Plaintiff in his Initial Disclosures and any amendment thereto, as well as any documents produced by Plaintiff or the City or any third-party during the course of discovery, including but not limited to, any depositions taken in this matter.  The City believes the following additional non-privileged documents in its possession are relevant to its defenses in this action:

1. City of Forest Park's Personnel Policies and Procedures Manual;

2. Terms and conditions of the Retirement Plans that are the subject of this action;

2. Plaintiff's personnel file;

3. Plaintiff's departmental personnel file;

4. Third-party audits into financials of the City of Forest Park Police Department, including any documentation reviewed by auditors;

6. The City of Forest Park Police Department's Standard Operating Procedures;

7. The City of Forest Park's Charter and various Ordinances; and

8. Plaintiff's EEOC Charge, any amendments thereto, and any documentation submitted in connection therewith.

The City reserves the right to supplement this response (or produce such other documents) in the event it become aware of other responsive documents that may be used in support of its defenses.

**<u>Chris Matson v. City of Forest Park</u>**
**Civil Action File No. 1:20-cv-04880-LMM-RDC**

**Attachment "E"**

**ARGONAUT  GREAT  CENTRAL  INSURANCE  COMPANY**
225 West Washington Street, 24th Floor
Chicago, IL  60606

# EMPLOYMENT PRACTICES LIABILITY COVERAGE PART DECLARATIONS

**IMPORTANT  NOTICE:  THIS  COVERAGE  PART  PROVIDES  CLAIMS-MADE  COVERAGE.  PLEASE  READ  THE  EN-TIRE  POLICY  CAREFULLY  TO  DETERMINE  YOUR  RIGHTS  AND  DUTIES  AND  WHAT  IS  AND  IS  NOT  COVERED.**

**POLICY NO.:** EP-4632511-05             **RENEWAL  OF NO.:*** EP-4632511-04

**Named Insured and Mailing Address***

City of Forest Park
745 Forest Parkway
Forest Park, GA  30297

IN RETURN FOR THE  PAYMENT OF THE  PREMIUM,  AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE  THE  INSURANCE  AS  STATED  IN THIS  POLICY.

---

**ITEM 1:   POLICY PERIOD:**

**Policy covers From:** 07/01/2019 **To:**  07/01/2020 **at 12:01 A.M. Standard Time at your mailing address shown above.***

This Insurance does not apply to claims which arose from a "wrongful act" commencing before the Retroactive Date shown below.  Enter NONE if no Retroactive  Date applies to this coverage  part.

RETROACTIVE  DATE:  11/15/1995

---

**ITEM 2:   LIABILITY LIMIT:**

| | |
|---|---|
| Each Wrongful Act: | $1,000,000 |
| Annual Aggregate: | $2,000,000 |
| Back Wages Limit: | $50,000 |

**ITEM 3:   DEDUCTIBLE:**

| | |
|---|---|
| Deductible:  Each Wrongful Act: | $25,000 |
| Deductible:  Back Wages: | $10,000 |

**ITEM 4:   FORMS AND ENDORSEMENTS  CONTAINED  IN THIS POLICY AT ITS INCEPTION:**

See policy forms list.

**ITEM 5:   PREMIUM:**

| | |
|---|---|
| Premium: | $28,287 |
| Minimum Premium: | $ |

---

*Information  may be omitted if shown elsewhere  in the policy

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY DECLARATIONS, IF APPLICABLE, COMMON POLICY CON-DITIONS, COVERAGE  FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc., 1996

DEFENDANT-000001

## EMPLOYMENT PRACTICES LIABILITY COVERAGE PART – PUBLIC ENTITY EMPLOYEES

In return for the payment of premium and subject to the terms and conditions of this policy, we agree with you as follows:

**INTRODUCTION**

Various provisions in this Coverage Part restrict coverage.  Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this coverage part the words **you** and **your** refer to *the Public Entity shown first as Named Insured in the Declarations*.  The words **we, us** and **our** refer to the company providing this insurance.

The word **insured** means any person or organization qualifying as such under WHO IS AN INSURED (**Section II**).

Other words and phrases that appear in quotation marks have special meaning.  Refer to DEFINITIONS (**Section VI**).

## SECTION I – COVERAGES

### A.  Insuring Agreement

We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of a "wrongful employment act"  committed anywhere in the world to which this insurance applies.  This insurance DOES NOT apply to any "claim" resulting from a "wrongful employment act" that commenced prior to the Retroactive Date shown in the declarations.

This insurance applies only to a "claim" for "damages" first made against any insured during the policy period or any Extended Reporting Period we provide  under SECTION V EXTENDED REPORTED PERIODS.  A "claim" will be deemed to have been made when notice of such "claim" is received and recorded by you or your "designee"  or by us, whichever comes first;

All "claims" arising out of the same "wrongful employment act" will be deemed to have been made at the time the first of those "claims" is made against any insured.

We will have the right and duty to defend the insured against any "suit" seeking "damages".  However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "wrongful employment act" to which this insurance does not apply.  We may, at our discretion, investigate any "wrongful employment act" and settle any "claim" or "suit" that may result. However:

   a.  The amount we will pay for "damages" is limited as described in Section III   Limits Of Insurance And Deductible; and
   b.  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments (Section I. C.).

### B.  Exclusions

This insurance does not apply to:

1.  Any "claim", or any portion of any "claim", alleging "bodily injury", "property damage", "personal injury", "advertising injury" or "employee benefits injury".

AG EP P001 01 02/09                              Argo Group US                              Page 1 of 10

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000002

2.  Any "claim" arising out of a breach of contract, including but not limited to amounts owed under any written employment-related contract or agreement or liability assumed under any contract or agreement.

3.  Any "claim" arising out of:

    a.  a dishonest, malicious, fraudulent or criminal act, error or omission by any person, or

    b.  a knowing violation of any law, statute or governmental regulation.

    This exclusion applies only to the insured(s) who committed or had knowledge of the fraudulent, criminal or dishonest act, error, omission or violation of law. However if it is later established by a judgment or other final adjudication that the was not proven, we will reimburse the insured for the reasonable costs of defense

4.  Any civil or criminal fines or penalties levied by any federal, state or local governmental regulatory agency or court.

5.  Any "claim" arising out of:

    a.  Any collective bargaining agreements; or

    b.  Any lockout, strike, picket line, replacement of workers or other labor disputes or labor negotiations, union grievances or any "claim" filed by or on behalf of a union.

6.  Any "claim" arising out of any liability based upon or attributable to any insured gaining profit, advantage, or remuneration to which that insured is not legally entitled.

7.  Any "claim" arising out of any obligation of the insured under the following laws and any subsequent amendments thereto, or any similar laws, rules or regulations:

    a.  Fair Labor Standards Act.

    b.  National Labor Relations Act.

    c.  Worker Adjustment and Retraining Notification Act.

    d.  Consolidated Omnibus Budget Reconciliation Act of 1985.

    e.  Employee Retirement Income Security Act of 1974.

    f.   The Pension Benefit Act,

    g.  The Occupational Safety and Health Act

    h.  Section 89 of the Internal Revenue Code

8.  Any "claim" arising out of disputes over benefits made by anyone including any beneficiary, related to their employment or application for employment by you. This includes, but is not limited to, an employee benefit plan, welfare plan, retirement plan, self insurance fund, or any obligation under the Employee Retirement Income Security Act, or COBRA, and any subsequent amendments thereto or any similar local, state or federal law or regulation.

9.  Any "claim" arising out of the cost of employment reinstatement, continued employment or complying with any order for, grant of, or agreement to provide injunctive or other non-monetary relief.

10. Any "claim" for relief that is equitable in nature and is not payable in money, or any request for equitable or injunctive relief, or the insured's cost to comply with any such non-monetary relief.

    The most we will pay to defend any "suit" that is solely seeking non-monetary or equitable or injunctive relief is limited under Supplementary Payments (Section I.C.).

    If a "suit" seeks both monetary damages and non-monetary relief, we will defend the "suit".

11.  Any "claim" arising out of:

    a.  Any prior and/or pending litigation as of the effective date of this Coverage Part set forth in the Declarations, or

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000003

    b.   Any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, regardless of the legal theory upon which such "claim" is predicated.

12.  Any "claim" arising out of:

    a.   The activities or operations of any school, school board, school district, or other similar educational unit, entity or institutions;

    b.   The activities or operations of any boards, commissions, agencies, authorities, administrative departments or other similar units operated by, under the jurisdiction, and within the budget of an entity described in 1 above;

    c.   The liability of any insured for their administration, supervision or oversight of any person, entity, department, agency, or institution described in 1 or 2 above.

## C.  Supplementary Payments

1.  We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend:

    a.   All expenses we incur.

    b.   The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    c.   All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $300 a day because of time off from work.

    d.   All costs taxed against the insured in the "suit" that result from a verdict covered by this policy.

    e.   Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    f.   All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Our obligation to defend an insured and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

2.  Non-Monetary Defense Limit

    a.   The most we will pay for defense costs, to defend any and all "suits" brought that are solely seeking non-monetary or equitable or injunctive relief and/or for legal fees awarded to the plaintiff in such "suits" is $50,000 per "suit".  The most we will pay is $50,000 in the aggregate for the policy period.

    b.   We will not pay to defend any "suits" initiated by a governmental entity that are solely seeking non-monetary or equitable or injunctive relief.

    This limit only applies when the "suit" would otherwise be covered by this Coverage Part, but for the fact it solely seeks non-monetary damages.

3.  Equal Employment Opportunity Commission (EEOC) Defense Limit

    While not a "claim" for "damages" otherwise covered by this Coverage Part, if we receive notification from you that an EEOC compliant has been filed against you during the policy period:

    The most we will pay for defense costs to respond to an EEOC complaint or to attend related hearings and/or for legal fees that are awarded to a complainant is $10,000 in excess of $2,500 for each EEOC complaint that is filed against you.  The most we will pay to defend any and all EEOC complaints filed against you during the policy period is $50,000 in the aggregate.

AG EP P001 01 02/09                     Argo Group US                   Page 3 of 10

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000004

These payments will not reduce the Limits of Insurance.

## SECTION II – WHO IS AN INSURED

You are an insured and.

Each of the following is an insured but only for acts that are both within the scope of his or her duties for you, and motivated, at least in part, by a purpose to serve you:

1.  Any member of the governing body of the named insured.

2.  Any board, commission, agency, authority, administrative department, or other similar unit operated by you and under your jurisdiction and within your budget.

3.  All your past, present, and future elected, appointed, or employed officials..

4.  Any employee or authorized volunteer of the named insured.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture, or any other entity, that is not shown as a named insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds; or

    b.  "Claims" made or "suits" brought; or

    c.  Persons or organizations making "claims" or bringing "suits".

2.  The most we will pay for all "claims", "suits" or actions covered by this Coverage Part is the ANNUAL AGGREGATE shown in the Declarations.

3.  Subject to 2. above, the Each "Wrongful Employment Act" Limit is the most we will pay for the sum of all "damages" arising out of any one ""wrongful employment act"".

4.  Deductible

    a.  Our obligation to pay "damages" on your behalf and to pay "loss adjustment expense" applies only to the amount of "damages" and "loss adjustment expense" in excess of the Deductible shown in the Declarations. The Deductible shown in the Declarations applies to the total amount of all "damages" and related "loss adjustment expense" because of all "claims" resulting from any one ""wrongful employment act"".

    b.  The terms of this insurance, including those with respect to:

        i.  Our right and duty to defend any "suits" seeking those "damages"; and

        ii. Your duties in the event of a ""wrongful employment act"", "claim", or "suit"

        Apply irrespective of the application of the Deductible amount.

    c.  We may pay any part, or all, of the Deductible amount applicable to "damages" and "loss adjustment expense" to effect settlement of any "claim" or "suit", and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible amount as has been paid by us.

AG EP P001 01 02/09                          Argo Group US                          Page 4 of 10

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000005

If we file suit seeking recovery for amounts paid by us as a deductible which is to be reimbursed by you, then you are responsible for all costs of collection, including reasonable attorney's fees and interest on the amount I question in the full amount allowed by law.

5. Back Wages Limit

Subject to the Aggregate Limit shown in the Declarations, the Back Wages Limit shown in the Declarations, after payment of the Back Wages Deductible shown in the Declarations,  is the most we will pay under this Coverage Part for the sum of all "back wages" for any one "wrongful employment act", regardless of the number of:

a. Insureds;

b. "Claims" made or "suits" brought; or

c. Persons or organizations making "claims" or bringing "suits".

This limit does not apply unless an amount is shown in the Declarations.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Coverage Part period shown in the Declarations, unless the Coverage Part period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

### A.  Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### B.  Duties of the Named Insured

1. The Named Insured in the Declarations, or if multiple entities are named, the first of such entities, shall be the sole agent, and shall act on behalf, of each insured with respect to all matters under this Coverage Part, including but not limited to:

   a. Giving notice of any "claim";

   b. Giving or receiving notice of cancellation;

   c. Receiving any other written notice or correspondence from us;

   d. Consenting to the settlement of any "suit";

   e. The receipt and acceptance of this Coverage Part and any endorsements to this Coverage Part;

   f. The payment of any premium due under this Coverage Part;

   g. The receipt of any return premiums that may become due under this Coverage Part; and

   h. The exercise of any rights under Section V  Extended Reporting Periods; and

2. Each insured agrees that the Named Insured in the Declarations, or if multiple entities are named, the first of such entities,  shall act on their behalf.

### C.  Duties In The Event Of A "Claim", "Suit" or ""Wrongful Employment Act""

1. You must see to it that we are notified of a ""wrongful employment act"" which may result in a "claim" covered by this Coverage Part as soon as practicable *after* the ""wrongful employment act"" is known by you, or your "designee".

   To the extent possible, notice should include:

   a. How, when and where the ""wrongful employment act"" took place;

   b. The names and addresses of any injured persons or witnesses; and

AG EP P001 01 02/09                          Argo Group US                          Page 5 of 10

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000006

c.  The nature and location of any injury or damage arising out of the ""wrongful employment act"".

Notice of a ""wrongful employment act"" is not notice of a "claim".

2.  If a "claim" is made or "suit" is brought against any insured, you must:

a.  Record the specifics of the "claim" or "suit" and the date received as soon as you, or your "designee" is notified of it;

b.  Notify us as soon as practicable after you or your "designee" learns of the "claim" or "suit".

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

3.  You and any other involved insured must:

a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

b.  Authorize us to obtain records and other information;

c.  Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent

5.  Notice given by or on behalf of:

a.  The insured;

b.  The injured person;

c.  Any other claimant;

to a licensed agent of ours with particulars sufficient to identify the insured shall be deemed notice to us.

**D.  Assignment**

Assignment of interest under this Coverage Part shall not bind us until our consent is endorsed hereon; however, subject otherwise to the terms hereof, this Coverage Part shall cover the estate, heirs, legal representative or assigns of the insured in the event of the insured's death, bankruptcy, insolvency or being adjudged incompetent.

**E.  Legal Action Against Us**

No person or organization has a right under this Coverage Part:

1.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

2.  To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**F.  Other Insurance**

The insurance provided by this Coverage Part is excess over any other collectible insurance. We will have no duty to defend the insured against any "suit" or "claim" for "damages" if any other insurer has a duty to defend the insured against that "suit".

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000007

1. The total amount that all other insurance would pay in the absence of this insurance; and

2. The total of all deductible and self-insured amounts under the other insurance.

If we share the loss, we will do so by equal share contribution if allowed by the other insurance. If equal share contribution is not permitted, we will contribute by the ratio our limit bears to the total applicable limits of all insurance.

**G. Conformity to Statute**

This Coverage Part is intended to be in full conformity with the laws of the state in which it is issued. If any provision of this Coverage Part (including endorsements which modify the Coverage Part) conflicts with any law, it is changed to comply with that law.

**H. Premium Audit**

Unless required by law, premiums for this Coverage Part shall not be subject to audit.

**I. Consent To Settle**

We will not settle any "suit" without your consent. If , however, you refuse to consent to any settlement recommended by us and elect to contest the "claim" or to continue any legal proceedings in connection with such "claim", then:

1. We will not be obligated to pay defense costs incurred by you subsequent to such refusal. and

2. If a settlement or adverse judgment occurs subsequent to such refusal, we will not be obligated to pay any amount in excess of the amount for which the "claim" could have been settled prior to such refusal.

Such amounts are subject to the provisions of Section III Limits of Insurance and Deductible of this Coverage Part.

**J. Representations**

By accepting this Coverage Part, you agree:

1. The application and the declarations are the basis of this Coverage Part and are to be considered as incorporated in and constituting part of this Coverage Part.

2. The statements in your application are accurate and complete;

3. Those statements are representations you made to us; and

4. We have issued this Coverage Part in reliance upon your representations.

**K. Transfer Of Rights Of Recovery Against Others To Us**

If an insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. No insured should do anything after a ""wrongful employment act"" to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**L. When We Do Not Renew**

If we decide not to renew this Coverage Part we will mail or deliver to the Named Insured in the Declarations, or if multiple entities are named, the first of such entities, notice of the non-renewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing as required by state law will be sufficient proof of notice. Proof of mailing requirements may vary by state.

**M. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the Named Insured in the Declarations, or if multiple entities are named, the first of such entities, this insurance applies:

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000008

1. As if each Named Insured were the only Named Insured; and
2. Separately to each insured against whom "claim" is made or "suit" is brought.

**N.  Title of Paragraphs**

The titles of the various paragraphs of this Coverage Part and endorsements, if any, attached to this Coverage Part, are inserted solely for convenience or reference and are not deemed in any way to affect the provisions to which they relate.

## SECTION V -  EXTENDED REPORTING PERIODS

A.  We will provide one or more Extended Reporting Periods, as described below, if:

1.  This Coverage Part is cancelled or not renewed; or

2.  We renew or replace this Coverage Part with insurance that:

a.  Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

b.  Does not apply to "wrongful employment acts" on a claims-made basis.

B.  Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" for:

1.  "Wrongful Employment Acts" that first occur before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect Extended Reporting Periods may not be cancelled.

C.  A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 90 days. Please refer to Section IV - Conditions, C. Duties in the Event of a "Claim", "Suit" or "Wrongful Employment Act", for your responsibilities when reporting an incident to us. The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

D.  The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

E.  A Supplemental Extended Reporting Period of 12, 24 or 36 months is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraphs C. and D. above, ends.

1.  You must give us a written request for the endorsement within 90 days after the end of the policy period. If you have chosen to purchase a Supplemental Extended Reporting Period for a period of less than 36 months, you may extend the period for up to a combined total of 36 months if you request the extension in writing no later than 60 days before the expiration of the Supplemental Extended Reporting Period originally elected.

2.  The Supplemental Extended Reporting Period(s) will not go into effect unless you pay the additional premium, determined in accordance with our rates, promptly when due. The additional premium for each 12-month Supplemental Extended Reporting Period will be equal to 50% of the annual premium for this Coverage Part.

3.  The insurance afforded for "claims" first made during the Supplemental Extended Reporting period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period(s) starts.

F.  The Limit of Liability that applies to the Supplemental Extended Reporting period is equal to the limit entered on the declarations in effect at the end of the policy period.

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000009

## SECTION VI - DEFINITIONS

1.  "Advertising Injury" means

    a.  The use of another's advertising idea in your advertisement; or

    b.  Infringement of copyright, patent, slogan, trademark, trade secret, trade dress, or other intellectual property rights.

2.  "Back wages" means wages that would have been earned in the past if a person had been employed or promoted or received a wage increase. "Back wages", as used in this Coverage Part, includes future wages and overtime, but "back wages" does not include:

    a.  Any wage loss resulting from any lockout, strike, picket line, replacement of workers or other similar actions in connection with labor disputes, labor negotiations, or collective bargaining agreements; or

    b.  Any future wages or other compensation paid to reinstated or rehired "employees" or claimants due and payable beyond the date of reinstatement or rehire.

3.  "Bodily Injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.

4.  "Claim" means written or oral demand, including a "suit", to hold the insured responsible for an alleged or actual "wrongful employment act" where payment of "damages" is sought.

5.  "Damages" means money damages including "back wages". "Damages" does not include any amount awarded as liquidated damages pursuant to any federal or state statute. "Damages" does not include punitive damages, unless required by state law.

6.  "Designee" means one of your officers, your legal department or an employee you designate to give notice to us.

7.  "Employee" includes a "leased worker".

8.  "Employee Benefits Injury" means injury that arises out of any act, error or omission in the administration of your "Employee Benefit Programs" or alleged violation of any employment related state or federal code, regulation or statute.

9.  "Employee Benefits Programs" means a program or programs of employee benefits maintained in connection with your business or operations, such as but not limited to, Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Workers Compensation, Unemployment Insurance, Social Security and Disability Benefits.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.

11. "Loss adjustment expense" means expenses allocated to a specific loss, "claim" or "suit" we incur or the insured incurs with our consent for the investigation, negotiation, arbitration, adjustment, settlement or defense of any "claim" or suit, whether paid by us or by the insured with our consent. "Loss adjustment expense" does not include salaries and expenses of our employees.

12. "Personal Injury" means:

    a.  False arrest, detention, imprisonment, abuse of process or malicious prosecution.

    b.  Wrongful entry or eviction, or other invasion of the right of private occupancy.

13. "Property Damage" means:

    a.  Physical injury to tangible property including all resulting loss of use of that property; or

AG EP P001 01 02/09                     Argo Group US                     Page 9 of 10

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000010

    b.   Loss of use of personal property that is not physically injured; or

    c.   Disappearance of tangible property (including money).

    d.   Impairment, deprivation or destruction of property, including loss of use thereof, resulting from proceedings in eminent domain, adverse possession, unlawful or unconstitutional taking of property or inverse condemnation, by whatever named called.

14. "Suit" means a civil proceeding in which "damages" to which this insurance applies are alleged.  "Suit" includes:

    a.   An arbitration proceeding in which "damages" may be awarded and to which the insured must submit or does submit with our consent; or

    b.   Any other alternative dispute resolution proceeding in which "damages" may be awarded and to which the insured submits with our consent.

15. "Volunteer " means a person who:

    a.   Is not an "employee" of any insured; or

    b.   Donates his or her work; or

    c.   Acts at the direction of, and within the scope of duties determined by, an insured; and

    d.   Is not paid a fee, salary or other compensation by any insured or anyone else for their work performed for the insured.

16. "Wrongful employment act" means any actual or alleged wrongful dismissal, discharge, termination of employment, wrongful failure or refusal to employ or to promote, or violation of employment discrimination or workplace harassment laws.

    All such acts, errors or omissions committed by one or more insureds that are substantially the same or are in any way directly or indirectly related -- either logically, causally or temporally – shall be deemed to constitute one Wrongful Employment Act, regardless of the number of "claims" or claimants.  The entire Wrongful Employment Act will be considered to have been committed on the date of the first act, error or omission.

Includes copyrighted material of Insurance Service offices, Inc., with its permission.
Copyright Insurance Service Offices, Inc.

DEFENDANT-000011

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL EXCLUSIONS

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

No coverage for any claim shall apply under this Coverage Part if coverage has been excluded below

| EXCLUSION APPLIES | EXCLUSION DOES NOT APPLY | | |
|---|---|---|---|
| | | | **Miscellaneous:** |
| ☒ | ☐ | 1. | Ski Facility; |
| ☒ | ☐ | 2. | Airport or activity related to aviation administration, supervision or operations; |
| ☒ | ☐ | 3. | Medical Clinic; |
| ☒ | ☐ | 4. | Hospital, Nursing Home or other type of medical facility; |
| ☒ | ☐ | 5. | Public Housing Project or Authority; |
| ☒ | ☐ | 6. | Jail, Penal Institution or similar type facility; |
| ☐ | ☒ | 7. | Child care facilities operating as a: |
| ☐ | ☒ | | a. Day Care |
| ☐ | ☒ | | b. Day Camp |
| ☐ | ☒ | | c. Nursery or similar facility; |
| ☒ | ☐ | 8. | Public Transportation System, including but not limited to transport, operations and premises; |
| ☒ | ☐ | 9. | Golf Course; |
| ☐ | ☒ | 10. | Fire District or Department; |
| ☐ | ☒ | 11. | Emergency Medical Service; |
| ☐ | ☐ | | Other: |
| | | | **Utilities:** |
| ☒ | ☐ | 12. | Public Gas Utility; |
| ☒ | ☐ | 13. | Public Water Utility; |
| ☒ | ☐ | 14. | Public Electric Utility; |
| ☒ | ☐ | 15. | Public Sewer Utility |
| ☐ | ☐ | | Other: |

DEFENDANT-000012

| EXCLUSION APPLIES | EXCLUSION DOES NOT APPLY | | |
|---|---|---|---|

**Law Enforcement:**

☐ ☒ 16. Activity or function by or on behalf of any law enforcement agency or any agent thereof and/or activity or function related to the administration of the criminal justice system;

☐ ☐ Other:

**Schools:**

☒ ☐ 17. Public School District or System, Public School, School Board(s), or other similar educational units, entities or institutions;

☒ ☐ 18. Operations of public or private entities or of political subdivisions other than schools, school boards, school districts or similar educational units, entities or institutions.

☐ ☐ Other:

**APPLICATION OF ENDORSEMENT** (Enter below any limitations, clarifications or special conditions on the application of this endorsement):

DEFENDANT-000013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRE-TERMINATION COVERAGE

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

The following is added to **C. Supplementary Payments** of **SECTION I – COVERAGES:**

    1.  g.  If during the Coverage Period you report a potential termination of any employee to us prior to the time the termination is made, we will pay for consultation with legal counsel of our choice to provide:

        a.  Legal analysis concerning the appropriateness of the termination; and

        b.  If applicable, legal assistance in handling the termination.

The most we will pay is $2,500 for each potential employee termination, subject to a Policy Period aggregate of $5,000.

AG EP 0009  01 04/11

© Copyright Argo Group US, 2010.
All rights reserved.

DEFENDANT-000014